**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Healthcare Services Incorporated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Advanced Reimbursement Solutions LLC, et al., <br><br> Defendants. | No. CV-21-01302-PHX-DLR (CDB) <br><br> **ORDER** |

Plaintiffs United Healthcare Services, Incorporated and UnitedHealthcare Insurance Company (collectively, "United") accuse Defendants—a medically billing company called Advanced Reimbursement Solutions, LLC ("ARS") and a host of healthcare providers who contracted with ARS for billing services ("Provider Defendants")—of healthcare fraud. At issue are seven motions to dismiss filed by the Provider Defendants. (Docs. 75, 80, 81, 82, 87, 89, 107) ARS also filed a motion to dismiss (Doc. 76), parts of which have been joined by the Provider Defendants. But ARS later filed for bankruptcy (Doc. 212), automatically staying proceedings against it. *See* 11 U.S.C. § 362. Though the Court has considered those portions of ARS's brief joined by the Provider Defendants, ARS's motion has been terminated. (Doc. 213.) For reasons explained below, all motions to dismiss are denied.[1]

---

[1] Oral argument is denied because the issues are exhaustively briefed and argument will not help the Court. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

## I.   Background[2]

United brings claims on its own behalf as the provider of fully insured health plans, and in its capacity as claims administrator for self-funded, employer-established health plans that retain United as a third-party administrator. United's policies and plans impose requirements designed to limit the cost of care. For example, plan members have cost-sharing obligations, such as deductibles, co-pays, and co-insurance. United requires providers to collect copayments and coinsurance and generally prohibits providers from waiving those cost-sharing obligations. United also controls costs by entering into network contracts with providers that set rates United will pay for services rendered. Out-of-network providers have not agreed to a particular reimbursement for their services and therefore can charge more that in-network providers. But to discourage members from obtaining care from more expensive out-of-network providers, United typically imposes higher cost-sharing obligations on members for out-of-network services. United also discourages in-network providers from referring plan members to out-of-network providers by requiring in-network providers to obtain either approval from United or the plan member's written consent prior to such referrals.

The Provider Defendants are out-of-network providers. During the relevant time period, they contracted with ARS. In exchange for providing the Provider Defendants with billing services, ARS received a portion of their reimbursements. United alleges that Defendants submitted inaccurate, fraudulent bills designed to extract inflated payments from United. For example, United accuses Defendants of inducing in-network providers to refer patients to the out-of-network Provider Defendants in violation of their contracts with United, coaxing plan member into obtaining out-of-network services by improperly waiving their cost-sharing obligations, submitting bills with improper procedure codes and that misrepresented the nature of the Provider Defendants' facilities, knowingly submitting claims for experimental, uncovered medical treatments, and misrepresenting their actual

---

[2] The following background is derived from United's complaint (Doc. 1) and presumed true for purposes of this order. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)

rates by instead billing at exaggerated rates required by ARS.

United alleges nine claims: (1) fraud; (2) negligent misrepresentation; (3) violation of the Arizona Consumer Fraud Act ("ACFA"); (4) violation of the Arizona Insurance Code ("AIC"); (5) tortious interference with contract; (6) unjust enrichment/money had and received; (7) civil conspiracy; (8) restitution under § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA); and (9) declaratory and injunctive relief under § 502(a)(3) of ERISA.[3] The Provider Defendants move to dismiss all claims against them.

## II.     Legal Standard

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). When ruling on a motion to dismiss, the Court does not assess whether the pleading's allegations are, in fact, true. Instead, well-pled factual allegations are accepted as true and construed in the light most favorable to the pleader. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Court's task merely is to determine whether those well-pled factual allegations plausibly state a claim to relief under governing law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The federal rules set a heightened pleading standard for allegations of fraud. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind maybe alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and citation omitted). When multiple defendants are sued in connection with an alleged fraudulent scheme, there is no

---

[3] The complaint contains a section entitled "fraudulent concealment," but United has clarified in its response brief that this section does not state an independent claim; instead, United makes these allegation for purposes of tolling the limitations periods for the claims it has alleged.

1  requirement that the pleader identify every instance of fraudulent conduct for every
2  defendant. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Though "Rule 9(b)
3  does not allow a complaint to merely lump multiple defendants together," in fraud suits
4  involving multiple defendants it is sufficient for a pleader to identify the role each
5  defendant played in the alleged fraudulent scheme. *Id.* at 764-65.

6  Further, in cases such as this one, involving thousands of alleged fraudulent
7  transactions, specifying each and every transaction with the particularity ordinarily
8  demanded by Rule 9(b) "is neither practical nor required." *Nutrishare, Inc. v. Connecticut*
9  *Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *4 (E.D. Cal. Mar.
10 14, 2014). "When dealing with thousands of instances, it is often the case that a complaint
11 or counterclaim laying out each and every misrepresentation in detail would provide less
12 effective notice and be less useful in framing the issues than would a shorter, more
13 generalized version." *Id.*

14 Indeed, Rule 9(b) serves four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

19 *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of*
20 *Georgia, Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990). "A court should hesitate to
21 dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been
22 made aware of the particular circumstances for which she will have to prepare a defense at
23 trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*
24 *v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "Rules 8(a) and
25 9(b) must be read in conjunction with one another. [A] [p]laintiff may state allegations of
26 fraud in short, plain statements, provided that said statements put [d]efendants on adequate
27 notice of the conduct alleged to be fraudulent." *Reilly v. Charles M. Brewer, Ltd. Profit*
28 *Sharing Plan*, No. CIV 02-2218-PHX-EHC, 2004 WL 7339615, at *4 (D. Ariz. Sep. 30,

2004).

## III. Discussion

The Provider Defendants' motions raise similar arguments. United filed an omnibus response to all motions. Given the overlapping nature of the Provider Defendants' arguments, the Court will address the arguments in the order presented by United's omnibus response, rather than repeating its analysis on a motion-by-motion basis.

### A. Fraud and Negligent Misrepresentation

To state a plausible fraud claim, United must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978). To state a plausible negligent misrepresentation claim, United must allege "(1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014).

United's detailed, 96-page, 298-paragraph complaint clears the pleading bar. United alleges that, from 2016 to the present, the Provider Defendants engaged in fraudulent billing practices to receive improper and inflated payments. In particular, United alleges that the Provider Defendants submitted or caused to be submitted claims that contained material misrepresentations or omissions about cost-share waivers, the amounts billed, the types of services provided, and out-of-network referrals. United further alleges that it justifiably relied on these misrepresentations to its detriment by paying claims that it otherwise would not have.

United did not impermissibly lump all Defendants together. "[A] complaint need

not distinguish between defendants that had the exact same role in a fraud." *United States ex rel. Silingo v. WellPoint*, Inc., 904 F.3d 667, 677 (9th Cir. 2018). United accuses all Provider Defendants of playing essentially the same role in the fraudulent scheme and pleads numerous, specific examples of such. The Court is satisfied that the Provider Defendants have been made aware of the circumstances for which they will have to prepare a defense, and that United has sufficient pre-discovery evidence supporting its allegations.

Nor is United required to plead the details of each fraudulent transaction. As the parties are well aware after many discovery dispute conferences, this case involves tens of thousands of reimbursement claims. United has disclosed the universe of claims at issue, and the parties are in the process of developing a methodology for conducting more in-depth discovery into a representative sample of claims. By doing so, identifying the Provider Defendants' roles in the overall scheme, and pleading specific examples of fraudulent claims, United has satisfied its pleading obligations. "The type of granularity the [Provider Defendants] seem to be demanding at the pleading stage is not practical, productive, or helpful in a case of this magnitude." *See Advanced Reimbursement Solutions LLC v. Aetna Life Ins. Co.*, No. CV-19-05395-PHX-DLR, 2022 WL 889058, at *10 (D. Ariz. Mar. 25, 2022).

United also adequately pleads that the information contained on the claims forms was material to its reimbursement decisions, and that its reliance on the accuracy of the information provided was reasonable, particularly given the massive number of claims United regularly adjudicates. Arguments to the contrary are unpersuasive. "[Q]uestions of materiality and reasonable reliance are questions of fact not suitable for resolution at the motion to dismiss stage." *Advanced Reimbursement Solutions*, 2022 WL 889058, at *7. Though United will bear the burden of proving its claims at a later stage of this litigation, its fraud and misrepresentation claims are adequately alleged for pleading purposes.

### B. Tortious Interference with Contract

"A prima facie case of intentional interference requires: (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3)

intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 31 (Ariz. 2002).

United adequately pleads such a claim. United alleges that the Provider Defendants regularly induced breaches of the contractual relationships between United and its in-network providers by offering financial incentives for referrals the otherwise would not be made. United also alleges that the Provider Defendants interfered with its contracts with plan members by surreptitiously or inappropriately waiving patient cost-sharing obligations. As a result, United claims it paid claims that it would not have had its contracts been respected. This is sufficient for pleading purposes.

### C. Unjust Enrichment/Money Had and Received

An unjust enrichment claims requires proof of (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *See Wang Elec., Inc. v. Smoke Tree Resort, Ltd. Liab. Co.*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012). Argument that United has not pled a plausible unjust enrichment claim "strikes the Court as bizarre—the entire thrust of [United's complaint] is that due to the allegedly tortious actions of [Defendants], it paid (or overpaid) claims to the [Provider Defendants] that it would not otherwise have paid." *Advanced Reimbursement Solutions*, 2022 WL 889058, at *11. This is sufficient for pleading purposes. To the extent the Provider Defendants argue that this claim fails because United has adequate remedies at law, their motions are misguided. It is common for unjust enrichment theories to be pled in the alternative, in the event that a claim which would provide a remedy at law proves unsuccessful after discovery. Though United cannot succeed on an unjust enrichment theory if it has an adequate remedy at law, nothing prevents United from alleging alternative theories at the pleading stage.

### D. ACFA

The ACFA prohibits the "use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." A.R.S. § 44-1522. "The [ACFA] is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-consumer transactions." *Madsen v. Western American Mortg. Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985). To succeed on a private cause of action under the ACFA, a plaintiff must prove "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983).

The Court rejects the Provider Defendants' argument that United lacks standing to bring a claim under the ACFA. Contrary to their arguments, the ACFA does not require a direct merchant-consumer transaction. *See Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). Likewise, the Court rejects the Provider Defendants' argument that they cannot be liable absent a showing that they sold or advertised services directly to United. The ACFA defines "merchandise" broadly to include "services." Here, United alleges that the Provider Defendants and ARS made material misstatements in connection with the provision of healthcare services to United plan members, for which United was billed, and that United was consequently and proximately injured because it paid more for those services than it otherwise would have. Although the relationship between United and the Provider Defendants is not as direct as the relationship between the Provider Defendants and the plan members who were provided services, Arizona law does not require a direct merchant-consumer transaction. United's ACFA claim is adequately pled.

**E. AIC**

United accuses the Provider Defendants of violating a provision of the AIC making it unlawful to "[p]resent, cause to be presented or prepare with the knowledge or belief that

it will be presented an oral or written statement, including computer generated documents, to or by an insurer, reinsurer, purported insurer or reinsurer, insurance producer or agent of a reinsurer that contains untrue statements of material fact or that fails to state any material fact with respect to . . .[a] claim for payment or benefit pursuant to an insurance policy." A.R.S. § 20-463(A)(1)(c). For reasons previously discussed, United has plausibly alleged that the Provider Defendants made such misstatements or omissions.

The Court rejects the argument that only the Director the Arizona Department of Insurance ("Director") may prosecute such a claim. The Arizona Supreme Court has held that an implied private right of action exists under the AIC. *See Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1138-39 (Ariz. 1982). The Court also rejects the argument that United must exhaust state law administrative remedies before pursuing a private cause of action. Although the AIC provides that the Director *may* investigate reports of prohibited practices and take action against the violator, *see* A.R.S. § 20-466(C), nothing in the language of the provisions cited by the Provider Defendants purports to require an injured person to make such a report or await such action by the Director before pursuing a private cause of action. Finally, the Court rejects the argument that United cannot bring a claim under the AIC unless it is a direct consumer. The Court sees nothing in the language of the AIC that requires a direct consumer relationship. Here, United is the insurer who made the payments based on the allegedly fraudulent claims. It seems plain that United would be the appropriate party to seek redress for the misstatements or omissions on those claim forms.

**F.  Civil Conspiracy**

A civil conspiracy requires at least two individuals to agree to commit and to accomplish an underlying tort. *Wells Fargo*, 38 P.3d at 36. United has plausibly alleged that the Provider Defendants and ARS agreed—by signing agreements and through their course of conduct thereafter—to commit and accomplish the underlying torts discussed above.

**G. ERISA Claims**

United seeks to recover overpayments allegedly made to ARS and the Provider

Defendants, and for declaratory and/or injunctive relief (namely, an order that Defendants cease the allegedly unlawful practices), under § 502(a)(3) of ERISA. United plausibly alleges that it made payments not required by the terms of its members' plans. The Provider Defendants argue that United's restitution claim fails because United has not identified specific res from which United seeks restitution. But United alleges that the funds at issue were deposited into bank accounts and that United can locate and trace those funds. The Court does not agree that United must perform that tracing at the pleading stage. "At this early stage, plaintiffs cannot be expected to identify a specific account in which the funds are held or string of transactions that show that the proceeds can be traced. To require as much would shut the door on most, if not all, claims for such equitable relief." *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950, 979 (W.D. Wis. 2011). As for United's claims for declaratory and/or injunctive relief, the Court finds no reason to narrow the scope of United's potential relief at the pleading stage. The propriety of injunctive relief is something that can be litigated, if necessary, at the remedial stage.

**H. Standing to Assert Non-ERISA Claims on Behalf of Self-Funded Plans**

The Provider Defendants argue that United lacks standing to assert non-ERISA claims on behalf of self-funded plans. The Court previously has rejected this sort of argument. *See Blue Cross of California Inc. v. Insys Therapeutics Inc.*, 390 F. Supp. 3d 996, 1007 (D. Ariz. 2019); *Advanced Reimbursement Solutions*, 2022 WL 889058, at *7.

**I. Preemption**

The Provider Defendants argue that ERISA preempts United's state law claims. The Court has previously rejected this argument. *See Blue Cross*, 390 F. Supp. 3d at 1003-05.

**J. Exhaustion of ERISA Administrative Remedies**

To the extent the Provider Defendants join in ARS's argument that United must exhaust administrative remedies before seeking to recover overpayments, the Court has previously rejected such an argument. *See Advanced Reimbursement Solutions*, 2022 WL 889058, at *4 ("Multiple district courts have determined that attempts to recover overpayments are not adverse benefits determinations subject to administrative

exhaustion.").

### K. Economic Loss Doctrine

Some of the Provider Defendants argue that United's fraud, negligent misrepresentation, and conspiracy claims are barred by the economic loss doctrine. The economic loss doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage." *Carstens v. City of Phx.*, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003). In other words, damages may not be recovered if the claim alleges "only economic damages resulting from an alleged breach of contract." *S.W. Pet Prod., Inc. v. Koch Indus., Inc.*, 89 F. Supp. 2d 1115, 1126 (D. Ariz. 2000). The doctrine's principal function "is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Flagstaff Affordable Hous. Ltd. P'Ship v. Design All., Inc.*, 223 P.3d 664, 671 (Ariz. 2010). A formulation of the economic loss rule that eliminates recovery under all tort theories is "overly broad." *Id.* at 667. Instead, the economic loss rule "may vary in its application depending on context-specific policy considerations." *Id.* at 669.

The doctrine has rarely, if ever, been applied outside the product liability and construction defect contexts, *see Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010), and the Court is unpersuaded that it should apply to this case, especially when this Court has repeatedly declined to apply the doctrine to fraud cases. *See, e.g., Jes Solar Co., Ltd. v. Matinee Energy, Inc.*, CV 12-626 TUC DCB, 2015 WL 10943562, at *5 (D. Ariz. Nov. 2, 2015) ("Fraud is not a loss to be bargained for by contracting parties, and the [economic loss doctrine] has no place in fraud cases simply because, as a matter of necessity, damages related to fraud will always be economic.").

### L. Statute of Limitations

The Provider Defendants argue that some or all of United's claims are time-barred because United should have known of the alleged misconduct as early as January 2016,

when it began paying the allegedly fraudulent claims.[4] "Arizona law disfavors statute of limitations defenses, preferring instead to resolve cases on their merits." *Henry v. City of Somerton*, No. CV-18-03058-PHX-DJH, 2021 WL 2514686, at *9 (D. Ariz. June 17, 2021). The affirmative defense of statute of limitations is properly raised in a motion to dismiss where it appears from the face of the complaint that the claim is barred," and the court "should not grant a motion to dismiss unless it appears certain plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated." *Anson v. American Motors Corp.*, 747 P.2d 581, 582 (Ariz. Ct. App. 1987).

United's alleges that ARS and the Provider Defendants engaged in a pattern of fraudulent concealment and, as a result, "United did not know of Defendants' misconduct until recently. In fact, it required extraordinary diligence to identify and uncover the misconduct that United alleges[.]" (Doc. 1 at 95.) The Court does not rule out the possibility that some of United's claims might later be shown to be time-barred. But the Court is unpersuaded that such untimeliness is clear from the face of the complaint, and that United will be unable to prove any set of facts establishing that it discovered the alleged misconduct within the applicable limitations periods. This is an argument better raised at a later stage of the litigation, when more than the allegations in the complaint are at issue and when all reasonable inferences need not necessarily be drawn in United's favor.

For these reasons,

**IT IS ORDERED** that the Provider Defendants' motions to dismiss (Docs. 75, 80, 81, 82, 87, 89, 107) are **DENIED**.

Dated this 30th day of September, 2022.

Douglas L. Rayes
United States District Judge

---

[4] The applicable limitation periods range from one year (for United's ACFA and AIC claims) to three years (for United's fraud, unjust enrichment, civil conspiracy, and ERISA clams). (Doc. 114 at 47 n.20.).