**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United Healthcare Services Incorporated, et al., | No. CV-21-01302-PHX-DLR |
| --- | --- |
| Plaintiffs, | **ORDER, DEFAULT JUDGMENT, AND PERMANENT INJUNCTION** |
| v. | |
| Advanced Reimbursement Solutions LLC, et al., | |
| Defendants. | |

Plaintiffs United Healthcare Services, Inc. and UnitedHealthcare Insurance Company (collectively, "United") brought this lawsuit against a medical billing company called Advanced Reimbursement Solutions, LLC ("ARS") and a host of out-of-network healthcare providers who contracted with ARS for billing services, accusing them of fraudulent billing practices. ARS filed for bankruptcy, resulting in a stay of proceedings against it, while United and most other Defendants settled their claims. The remaining Defendants—Uptown Facility, LLC ("Uptown"), Metro OTC, LLC ("Metro"), Prestige Interventional Group, LLC ("Prestige"), Lakeshore Interventional Treatment Center, LLC ("Lakeshore"), and Gregory Brian Maxon ("Maxon") (collectively, "Defaulting Defendants")—are in default.

At issue is United's motion for default judgment. (Doc. 567.) Uptown, Prestige, and Metro filed a response, in which they do not contest the sufficiency of the claims against

them, the propriety of entering default judgment, or the amount of damages sought, but they argue that the injunctive relief United seeks is too broad because it seeks to enjoin Defaulting Defendants' managers and owners in their separate and individual capacities, even though they are not, separately and individually, parties to this case. (Doc. 574.)

## I.    Legal Standard

After the clerk enters default, the Court may enter default judgment pursuant to Rule 55(b). The Court's "decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). When determining whether default judgment is appropriate, the Court considers several factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). To make this decision, the Court accepts as true the complaint's well-pled factual allegations, except those related to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). If the Court determines that the allegations in the complaint are sufficient for imposing default judgment, then it must "determine the amount and character of the relief that should be awarded." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012).

## II.    Analysis

Having weighed the relevant factors, the Court finds default judgment is appropriate, though it agrees with Uptown, Prestige, and Metro that the injunction United seeks should be modified.

### A.  Possibility of prejudice to United

This factor favors entry of default judgment because, if default judgment is not entered, United "will likely be without other recourse for recovery" against Defaulting Defendants. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

**B. The merits of United's claims, the sufficiency of its complaint, and the possibility of factual disputes**

The Court previously denied motions to dismiss filed by Uptown, Metro, Prestige, and Lakeshore, finding that United stated plausible claims. "The second, third, and fifth *Eitel* factors favor default judgment where, as in this case, the complaint sufficiently states a plausible claim for relief[.]" *SCF RC Funding I, LLC v. GKRM, Inc.*, No. CV-21-00658-PHX-DLR, 2021 WL 3290530, at *2 (D. Ariz. Aug. 2, 2021).

**C. Whether default is due to excusable neglect**

There is no evidence that Defaulting Defendants' default was the result of excusable neglect. All Defaulting Defendants were served. Metro, Prestige, Uptown, and Lakeshore initially appeared through counsel. Counsel for these Defaulting Defendants later withdrew, after which the Court ordered them to obtain new counsel or risk default. They each failed to do so, resulting in the Clerk's entry of default against them. Maxon appeared *pro se*, sought and obtained extensions of time in which to respond to United's first amended complaint, but ultimately failed to do so, resulting in entry of default against him. What's more, Uptown, Prestige, and Metro responded to United's default judgment motion to object to the scope of injunctive relief, but not to contest the propriety of entering default judgment. Given this history "is unlikely that [Defaulting Defendants'] failure to answer and the resulting default[s] was a result of excusable neglect." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-187-TUC-CKJ, 2008 WL 65604, at *5 (D. Ariz. Jan. 3, 2008).

**D. The amount of money at stake**

The fourth *Eitel* factor centers around the money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. Generally, when the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472. But default judgment may be appropriate where

- 3 -

the sum of money is tailored to the specific misconduct of the defendant. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011).

Here, the amount of money at stake is considerable. United seeks $1,514,866.38 from Uptown, $2,422,959.68 from Metro, $4,654,674.69 from Prestige, and $2,712,420.20 from Lakeshore.[1] (Doc. 567 at 2.) However, these amounts are properly tailored to the specific misconduct of these Defaulting Defendants—United seeks the amount it paid each corporate Defaulting Defendant due to their billing fraud, plus statutory interest. United provides itemized accountings for these sums. (Doc. 567-1 at 2-3; Doc. 569 at 23-329.) And, notably, in their response Uptown, Metro, and Prestige do not contest the propriety of these damages. Accordingly, although the amounts sought by United are substantial, the Court finds default judgment nonetheless is warranted because the damages are properly tailored to the specific misconduct and adequately supported by the evidentiary record.

In addition to monetary damages against the corporate Defaulting Defendants, United requests that the Court permanently enjoin all Defaulting Defendants from engaging in the following conduct:

1. Having any involvement in Claims Billing Services for any medical services or treatments, now or at any point in the future, regardless of whether such claims are billed on behalf of third parties.

2. Having any financial interest, directly or indirectly, in any entity that is involved in Claims Billing Services or that otherwise submits or bills claims to or for payment by United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates.

3. Any other participation in the healthcare industry that directly or indirectly involves seeking reimbursement from United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates, including any health insurance billing or reimbursement ventures, in any capacity, whether as an owner, employee, or independent contractor

---

[1] United does not seek damages from Maxon.

(Doc. 567 at 14.)  To obtain a permanent injunction, the moving party must show (1) that it suffered an irreparable injury; (2) that legal remedies, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

United has shown that permanent injunctive relief is warranted to prevent Defaulting Defendants from engaging in similar billing misconduct in the future. United has been injured by Defaulting Defendants' misconduct and, although monetary damages are available, United has shown they are inadequate because (1) the damages do not account for other costs Defaulting Defendants' misconduct imposed on United (such as administrative costs and the cost of investigating the complex fraud scheme) and (2) there is reason to believe the corporate Defaulting Defendants are insolvent. (Doc. 567 at 15-16.) Regarding the balance of hardships, a permanent injunction likely will not impose a substantial hardship on Defaulting Defendants who, to United's knowledge, are not currently active in the healthcare market. And, given the nature of the misconduct at issue, Defaulting Defendants have proven unlikely to participate responsibly in the healthcare market in the future. The public interest therefore is served by a permanent injunction.[2]

Uptown, Metro, and Prestige do not oppose entry of a permanent injunction against them. Instead, they object to United's proposed permanent injunction because it would enjoin Defaulting Defendants *and their managers and owners*, who are not parties to this lawsuit. (Doc. 574 at 1.) On this score, the Court agrees. "An injunction issued against a corporation or association binds the agents of that organization *to the extent they are acting on behalf of that organization.*" *People v. Operation Rescue*, 80 F.3d 64, 70 (2d Cir. 1996) (emphasis added). "Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, *but does not justify granting injunctive relief against the non-party in its separate capacity.*"

---

[2] Notably, other Defendants stipulated to entry of a substantially similar permanent injunction as part of their settlement with United. (*See* Doc. 488.)

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395-96 (Fed. Cir. 1996) (emphasis added.) Here, that means the Court may enjoin Defaulting Defendants, and that injunction is binding on Defaulting Defendants' managers and owners in their capacity as "officers, agents, servants, [or] employees" of Defaulting Defendants. *See* Fed. R. Civ. P. 65(d)(2)(B). These managers and owners therefore are bound to the extent they act on behalf of Defaulting Defendants. But, to the extent these managers and owners act in their separate individual capacities, unrelated to Defaulting Defendants, they cannot be bound by this Court's permanent injunction because they are not parties to this action.

In its reply brief, United asks the Court, in the alternative, to make its permanent injunction binding on "Defaulting Defendants and their agents, employees, and representatives, and all entities and persons, real, fictious, or corporate, and their respective officers, agents, servants, employees, and their successors, and representatives, in concert or participation with them[.]" (Doc. 575 at 6.) United contends that this language "hews closely to Rule 65(d)(2) and provides protection for United against further fraudulent conduct by the principals of [Defaulting] Defendants." (*Id.*) United also notes that in *I.C.C. v. Rio Grande Growers Co-op.*, 564 F.2d 848, 849 (9th Cir. 1977), the Ninth Circuit found comparable language binding against the principal of a defunct party who later formed a new company to engage in the same conduct prohibited by the injunction, which is United's concern here.

The Court will adopt United's alternative proposal because, without such language, Defaulting Defendants could "circumvent [the Court's injunction] by carrying out prohibited acts through successive corporations not party to the original action," which is something courts "cannot accept." *Id.* at 849; *see also Hexacomb Corp. v. GTW Enterprises, Inc.*, No. 93 C 3107, 1994 WL 171533, at *6 (N.D. Ill. 1994) ("Many courts have held former employees of the enjoined company to be in contempt where they join a new company and conduct the activity prohibited by the injunction.").

- 6 -

### E. Public policy favoring decisions on the merits

The last factor always weighs against default judgment given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Rule 55(b)'s existence, however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defaulting Defendants' failure to answer the complaint "makes a decision on the merits impractical, if not impossible." *Gemmel*, 2008 WL 65604, at *5. Stated differently, it is difficult to reach the merits when the opposing party is absent. Because United has asserted plausible claims for relief to which Defaulting Defendants have failed to respond, the policy encouraging decisions on the merits does not weigh against entry of a default judgment in this case.

**IT IS ORDERED** that United's motion for default judgment (Doc. 567) is **GRANTED**. Default judgment is entered against Defendants Uptown Facility, LLC ("Uptown"), Metro OTC, LLC ("Metro"), Prestige Interventional Group, LLC ("Prestige"), Lakeshore Interventional Treatment Center, LLC ("Lakeshore"), and Gregory Brian Maxon (collectively, "Defaulting Defendants") as follows:

1. The Court awards judgment in the amount of **$1,514,866.38** against Uptown. This judgment shall bear interest at the rate authorized under 28 U.S.C. § 1961, commencing as of the date hereof.

2. The Court awards judgment in the amount of **$2,422,959.68** against Metro. This judgment shall bear interest at the rate authorized under 28 U.S.C. § 1961, commencing as of the date hereof.

3. The Court awards judgment in the amount of **$4,654,674.69** against Prestige. This judgment shall bear interest at the rate authorized under 28 U.S.C. § 1961, commencing as of the date hereof.

4. The Court awards judgment in the amount of **$2,712,420.20** against Lakeshore. This judgment shall bear interest at the rate authorized under 28 U.S.C. § 1961, commencing as of the date hereof.

5. Defaulting Defendants; their agents, employees, and representatives; and all entities and persons (real, fictious, or corporate), and their respective officers, agents, servants, employees, and their successors, and representatives, in concert or participation with them, are permanently enjoined from:

    a. Having any involvement in Claims Billing Services for any Health Care Provider for any medical services or treatments, now or at any point in the future, regardless of whether such Claims are billed on behalf of third parties.

    b. Having any financial interest, directly or indirectly, in any entity that is involved in Claims Billing Services or that otherwise submits or bills Claims to or for payment by United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates.

    c. Any other participation in the healthcare industry that directly or indirectly involves seeking reimbursement from United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates, including any health insurance billing or reimbursement ventures, in any capacity, whether as an owner, employee, or independent contractor.

6. For purposes of this order, the following definitions apply:

    a. "Claims Billing Services" means any and all aspects of preparation or submission of Claims to or for payment by United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates. As defined herein, "Claims Billing Services" includes, without limitation: Provision of any compensation or other

incentive, financial or otherwise, in exchange for: (i) completion of any physician audit or other administrative support function related to the preparation or submission of Claims; (ii) referrals for treatment of a United Member by a Health Care Provider or a healthcare facility; or (iii) recruitment or attempts to recruit a new Health Care Provider to any of the foregoing services.

b. "Claim" means a demand or request for payment.

c. "Health Care Provider" means an individual or entity providing medical and/or other health care services. For purposes of this Order, "Health Care Provider" includes any party that supplies pharmaceuticals or medical equipment of any kind.

d. "United Member" means an individual with a contract for a health and welfare benefit plan (including commercial, Medicare, and Medicaid plans) with United, its subsidiaries currently owned or hereinafter acquired, its affiliates, or self-funded plans administered by United, its subsidiaries currently owned or hereinafter acquired, or its affiliates.

Dated this 18th day of March, 2026.



Douglas L. Rayes
Senior United States District Judge